**No. 26-6517**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

Edward Womble

Plaintiff - Appellant,

v.

Patel Rahil; LaShea Young

Defendants - Appellees.

---

On Appeal from the U.S. District Court
for the Western District of North Carolina
No. 5:26-CV-53, Honorable Matthew E. Orso

---

# OPENING BRIEF

---

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................i
TABLE OF AUTHORITIES ............................................................................ ii
STATEMENT OF JURISDICTION ..................................................................1
STATEMENT OF THE ISSUE .........................................................................1
STATEMENT OF THE CASE ..........................................................................2
SUMMARY OF THE ARGUMENT.................................................................3
ARGUMENT .....................................................................................................5
CONCLUSION .................................................................................................16
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Barker v. Osemwingie*, No. 2:16-CV-3008, 2017 WL 3454443 (E.D. Cal. Aug. 11, 2017) ........................................................................................14

*Barker v. Osemwingie*, No. 20-15503, 2021 WL 5564625, at *1 (9th Cir. Nov. 29, 2021) ........................................................................................14

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)................................................11

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996)....................................................10

*Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481 (7th Cir. 1997) ..............................10

*Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285 (3d Cir. 2019)..................................13

*Kentucky v. Graham*, 473 U.S. 159 (1985) ..........................................................15

*Magwood v. Patterson*, 561 U.S. 320 (2010)........................................................11

*Morris v. California*, No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) ...............14

*Munoz v. California Department of Corrections and Rehabilitation,* 842 F. App'x 59 (9th Cir. 2021)................................................................................13

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ................................12

*Simmons v. Navajo Cnty.*, 609 F.3d 1011 (9th Cir. 2010) .....................................14

*United States v. Georgia*, 546 U.S. 151 (2006)...................................................9, 12

*Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067 (2018) ..........................11

## Statutes

42 U.S.C. § 12102 ....................................................................................................6

## Regulations

28 C.F.R. § 35.108 ...................................................................................................6

## STATEMENT OF JURISDICTION

Edward Womble invoked the district court's jurisdiction pursuant to 28 U.S.C. § 1331. He brought his complaint under 42 U.S.C. § 12132 and 42 U.S.C. § 1983. J.A. 1; J.A. 5. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court has entered final judgment, on April 9, 2026. J.A. 15. Womble filed a timely notice of appeal which the district court docketed on April 27, 2026. J.A. 41.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915A. *Shaw v. Foreman*, 59 F.4th 121, 126 (4th Cir. 2023). This Court "should not dismiss a plaintiff's claim unless, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Id.* (cleaned up). This construal must be particularly liberal here, as "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## STATEMENT OF THE ISSUE

I. Whether Womble's allegations stated a claim under the Americans with Disabilities Act.

## STATEMENT OF THE CASE

Edward Womble was and remains incarcerated at the Alexander Correctional Institution in North Carolina. In March 2026, he filled out and filed the Western District of North Carolina's simple form complaint. J.A. 1. He alleged that his hearing aid battery died in April 2025 but was not replaced until January 2026. J.A. 2 He explained that he has had a hearing aid since 2024 and nothing had changed to make the hearing aid unnecessary. *Id.* Indeed, he was classified in the prison's system as "ADA." *Id.* He cannot hear at all in his right ear. J.A. 3.

As a result of this failure, Womble missed overhead announcements including "meal calls," "med[ical] calls," "[r]eligion calls," and educational calls. *Id.* This caused him to miss out on prison services and programming. He also could not hear his radio. *Id.* He could not speak with his family on the phone. *Id.* He went through a "lot of issues" and a "lot of pain and suffering" without his hearing aid. *Id.*

Defendants Rahil Patel and Lashea Young are medical officials who failed to provide Womble his hearing aid battery. A. 38. For purposes of his ADA claim, Womble sued them in their official capacities, which is functionally identical to a suit against the state. J.A. 1.

The court screened Womble's complaint for frivolity under 28 U.S.C. § 1915A. J.A. 2. The court dismissed Womble's ADA claim with two sentences of analysis. J.A. 5. "Other than his allegation of being unable to hear in his right ear,"

the court wrote, "Plaintiff has failed to alleged [sic] facts supporting the elements of such an ADA claim." *Id.* Additionally, the court wrote, "the ADA cannot be used to assert a claim of inadequate medical care." J.A. 6 (cleaned up). The court dismissed all of his claims, allowing him to amend his complaint if he could do so "in accordance with the terms of this Order." *Id.*

Womble amended his complaint. J.A. 25. He explained that starting the day after his hearing aid died, he asked prison staff for a new hearing aid battery. J.A. 37. Staff repeatedly told him a battery was on order. *Id.* Staff finally replaced his battery nine months later. *Id.* Staff were aware of his need for a hearing aid battery and refused to provide it for over eight months. J.A. 38.

The district court dismissed his complaint again on the same grounds. J.A. 12–13. The two sentences analyzing his ADA claim are identical, including the typo: "Other than his allegation of being unable to hear in his right ear, Plaintiff has failed to alleged [sic] facts supporting the elements of such an ADA claim. Moreover, the ADA cannot be used to assert a claim of inadequate medical care." *Id.* (cleaned up). Womble timely appealed. J.A. 41.

## SUMMARY OF THE ARGUMENT

Womble's allegations state a claim under Title II of the ADA. He alleged that he cannot hear in his right ear, has used a hearing aid since 2024, and was classified

by the prison as having a disability. Hearing is a major life activity, and his complete inability to hear in one ear is a substantial limitation.

Womble also plausibly alleged denial of meaningful access and failure to provide a reasonable modification. His hearing-aid battery died; he requested a replacement beginning the next day; prison staff knew of his need; and the battery was not replaced for more than eight months. During that period, he could not hear announcements summoning him to meals and medical care. Providing a replacement battery for an existing hearing aid is reasonable on its face, and reasonableness ordinarily presents a fact-specific question inappropriate for resolution at screening.

The rule excluding claims that merely challenge the adequacy of medical treatment does not apply. Womble disputes no diagnosis or clinical judgment: a battery does not treat his hearing loss, but enables him to access prison services despite it. Finally, his pro se complaint should be construed as asserting an official-capacity claim against the named prison employees. At minimum, he should have been permitted to clarify the defendants' capacities or substitute the responsible public entity. The judgment should therefore be reversed and the case remanded.

## ARGUMENT

### I. Womble's Allegations Stated a Claim Under the ADA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the statute, "discrimination" is not limited to instances of animus toward individuals with disabilities. Rather, it "includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Seremeth v. Bd. of Cnty. Comm'rs Frederick Cnty.*, 673 F.3d 333, 336 (4th Cir. 2012) (quoting 42 U.S.C. § 12112(b)(5)(A)); *see also, e.g.*, *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) ("Section 504 and Title II mandate that entities act *affirmatively* to evaluate the programs and services they offer and to ensure that people with disabilities will have meaningful access to those services."). An accommodation "is reasonable if it is reasonable on its face or used ordinarily or in the run of cases and will not cause undue hardship." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) (internal quotation marks and citation omitted).

The ADA "unmistakably includes State prisons and prisoners within its coverage," and encompasses the services offered by prisons. *Pennsylvania Dep't of*

*Corr. v. Yeskey*, 524 U.S. 206, 209-11 (1998). Indeed, the "affirmative duty" to accommodate "is seemingly at its *apex* in the context of a prison facility, in light of the uneven power dynamic between prison officials and inmates that inherently and appropriately exists, and also the fact that departments of corrections have complete control over whether prison inmates (disabled or not) receive any programs or services at all." *Pierce*, 128 F. Supp. 3d at 269.

A public entity violates the ADA when it fails to provide a reasonable accommodation to disabled individuals "that will allow them the meaningful access" to which they are entitled. *Lamone*, 813 F.3d at 507-08; *Seremeth*, 673 F.3d at 336. The entity may be liable under a direct theory of liability or on a secondary basis for the violations of its agents. *Rosen v. Montgomery County, Maryland*, 121 F.3d 154, 157 n.3 (4th Cir. 1997).

Womble alleged that he had a disability under the ADA. The ADA defines disability, in relevant part, as "a physical or mental impairment that substantially limits one or more major life activities of [the] individual." 42 U.S.C. § 12102(1)(A).[1] Congress intended this definition to be interpreted expansively. 42 U.S.C. § 12102(4)(A); 28 C.F.R. § 35.108(a) (mandating, in keeping with the ADA

[1] Although Womble's "actual" impairment is both clear and sufficient, he also qualifies as someone with a "record of impairment," under 42 U.S.C. § 12102(1)(B) as demonstrated by both the accommodations he was already given and his designation as "ADA." J.A. 38.

Amendments Act of 2008, that "[t]he definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."). Hearing is explicitly defined as a "major life activity" under the ADA. 42 U.S.C. § 12102(2)(A). Whether an impairment is "substantially limiting" is an individualized, fact-intensive inquiry that depends on the "unique facts and circumstances surrounding [the] particular impairment" and its impact on the individual's life. In conducting this inquiry, courts may not consider the impact of mitigating measures. *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 670 (4th Cir. 2019). Under the ADA's implementing regulations, the impairment is assessed "as compared to most people in the general population." 28 C.F.R. § 35.108(d)(1)(v). In his amended complaint, Womble alleges that the hearing loss in his right ear caused him to miss meal calls and medical calls. J.A. 29. In his initial complaint, he also alleged that due to his partial deafness he "missed Religion Calls" and "Educational Calls," "could not hear Radio," and "could not engage with family on the phone." J.A. 21. This hearing loss plainly substantially limits Womble's ability to hear as compared to most people; thus, he has pled a "disability" covered by the ADA.

Womble also alleged that he lacked meaningful access to several services or activities provided by the public entity. The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate

discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Though the ADA does not define the "services, programs, or activities of a public entity," the Rehabilitation Act of 1973 defines a "program or activity" as "*all* of the operations of ... a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added). The Rehabilitation Act and the ADA are generally interpreted in tandem, and Congress has instructed courts that nothing in the ADA shall be construed to apply a lesser standard than the standards applied under § 504 of the Rehabilitation Act or the regulations issued by Federal agencies pursuant to that title. *See A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 362 (4th Cir. 2008). The Department of Justice—which is tasked with administering Title II of the ADA and promulgating regulations to implement it—has interpreted Title II to apply to "anything a public entity does." 28 C.F.R. Pt. 35, App. B (Section 35.102 Application), at 687 (2017). "[C]orrectional facilities are unique facilities under Title II," because "[disabled] [i]nmates cannot leave the facilities and must have their needs met by the corrections system." 28 C.F.R. Pt. 35, App. A; *id.* ("If the detention and correctional facilities fail to accommodate prisoners with disabilities, these individuals have little recourse, particularly when the need is great.").

As a result, virtually everything a prison does qualifies as a program, service, or activity. *See Seremeth*, 673 F.3d at 338 (noting the Supreme Court's "expansive interpretation" in defining program, services, or activities in the prison context); *see*

*also Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity, including sleeping, eating, showering, [and] toileting").

Womble identified several services that he lacked meaningful access to, either because he could not hear the announcements or his literal inability to hear. These included "meal calls," "med[ical] calls," "[r]eligion calls," and educational calls. J.A. 21; J.A. 29. He also could not speak to his family on the phone or listen to his radio. J.A. 21. All of these constituted "services" provided by the prison. The U.S. Supreme Court in *Pennsylvania Department of Corrections v. Yeskey* listed both medical services and educational programming as examples of services from prisons under Title II of the ADA. 524 U.S. 206, 210 (1998). The Court has also suggested that the failure of a prison to "accommodate [a prisoner's] disability-related needs" in, *inter alia*, its provision of medical care, would create liability under the ADA. *United States v. Georgia*, 546 U.S. 151, 157 (2006). Department of Justice regulations require equal access to prison services, which it describes as including "dining," "educational programs," "medical services," and "religious services." 28 C.F.R. § 35.151(k)(2)(iii). Elementary communication is a service. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010). So is educational

programming and the dining hall. *See Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997) (noting that educational programming and use of a library and the dining hall are activities under the ADA).

Womble plausibly alleged that his lack of meaningful access was not reasonably accommodated. Like many reasonableness determinations, whether Defendants acted reasonably in accommodating a disability is a "fact-intensive" inquiry that "is best left to a jury, who can weigh the competing evidence and make credibility determinations." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 675 (4th Cir. 2019). This is not the rare case in which a requested accommodation is so unreasonable that it would flunk this undemanding standard at such an early stage. Womble already had the accommodations he needed in a hearing aid; he simply needed a functioning battery. Staff refused to provide one for nine months despite his repeated requests. J.A. 29; J.A. 37–38. Womble therefore plausibly alleges a failure to provide a reasonable modification.

The district court erred too in holding that Womble could not bring a disability law claim because of a rule prohibiting using the ADA to bring medical malpractice actions. J.A. 6. The district court cited other district court opinions which in turn cited *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), an opinion widely cited for the proposition that the ADA does not provide an alternative cause of action for prisoners seeking to bring medical malpractice claims. This Court has not adopted

the rule in a binding opinion and should not here, both because the rule is wrong and because it does not apply to Womble's claim.

*Madigan* reached its conclusion by using an outdated mode of statutory interpretation. Writing for the Seventh Circuit, Judge Richard Posner interpreted the ADA in the common-law style, creating "judge-made exceptions" to the plain statutory text in order to "avoid absurd[]" outcomes, and speculating about what Congress could "really have intended" the ADA to mean. *Id.* at 249. Today, of course, courts reject this approach. Courts do not invent exceptions based on policy preferences and instead interpret statutes according to the ordinary meaning of their plain text. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) ("Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."); *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018) ("It is not our function to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have intended.") (internal quotation marks omitted); *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent.").

Since *Madigan*, courts have made clear that the ADA, including in its application to prisons, is no exception to this approach. For example, parsing the text of the statute, the U.S. Supreme Court has unanimously held that prisons are "public entities" within the meaning of the ADA, and that the "programs, services, or activities" prisons offer, like "recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" are all subject to the ADA's usual requirements. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).[2] The Court has also suggested that the failure of a prison to "accommodate [a prisoner's] disability-related needs" in, *inter alia*, its provision of medical care, would create liability under the ADA. *United States v. Georgia*, 546 U.S. 151, 157 (2006). These cases do not directly address the statement in *Madigan* that there is a distinction between failure to accommodate claims under the ADA and medical malpractice-type claims. But the decisions do illustrate the extent to which *Madigan* is out of step with the correct approach for interpreting and applying ADA.

On that note, while several other courts have adopted the rule from *Madigan*, these same courts also carefully limit its application. Courts have made clear that the

[2] Notably, the majority of the opinion in *Madigan* was dedicated to the opposite conclusion: that the ADA could not apply to prisons because, although "[t]here is no express exclusion of jails and prisons," the Court explained, "[j]udgemade exceptions to laws of general applicability are justified to avoid absurdity." 84 F.3d at 248–49 (citations omitted). In a unanimous opinion drafted by Justice Scalia, *Yeskey* relied on the plain text of the statute to conclude to the contrary. 524 U.S. at 209–10.

judicially created and atextual exception to the ADA applies only to claims brought specifically because of poor medical care. Courts err when they misidentify an allegation that a prison failed to accommodate a disability as an allegation that staff failed to cure an injury—a mistake that causes the unwritten exception to swallow the statute whole.

In a recent Third Circuit case, for example, a prisoner with leg braces brought an ADA claim alleging that he could not safely get in and out of a prison shower. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019). The district court dismissed his claim, citing *Madigan*. *Id.* at 290. The Third Circuit reversed, as "complaints about not being provided an accessible shower are not allegations of medical malpractice or disagreements about medical treatment. They are requests for reasonable accommodations so that inmates with disabilities can take a shower—just like able-bodied inmates." *Id.* at 291.

The Ninth Circuit has reversed district courts for making this same error several times in recent years. First, in *Munoz v. California Department of Corrections and Rehabilitation*, the plaintiff was placed on a top bunk despite a history of knee problems. 842 F. App'x 59, 62 (9th Cir. 2021). The district court held that such placement was not a disability accommodation but rather medical treatment and therefore excluded from the ADA under *Simmons v. Navajo County*, a case citing to and adopting the rule from *Madigan* with a lone sentence of analysis.

609 F.3d 1011, 1022 (9th Cir. 2010). The Ninth Circuit disagreed, holding that "Munoz does not argue he was denied adequate treatment for his knee injuries, only that he was denied an accommodation for his disability." *Munoz*, 842 F. App'x at 62.

In *Barker v. Osemwingie*, a plaintiff sued CDCR after he was injured by two prison officials who used a device to transfer him from his wheelchair to his toilet. No. 20-15503, 2021 WL 5564625, at *1 (9th Cir. Nov. 29, 2021). The magistrate judge recommended dismissing his Title II claim because his claim purportedly addressed the adequacy of his medical care, citing to both *Simmons* and *Madigan*. *Barker v. Osemwingie*, No. 2:16-CV-3008, 2017 WL 3454443, at *4 (E.D. Cal. Aug. 11, 2017), *report and recommendation adopted*, No. 2:16-CV-3008, 2017 WL 6512882 (E.D. Cal. Dec. 20, 2017). The Ninth Circuit reversed, holding that "the district court improperly relied on *Simmons*" because "[t]ransferring an inmate from a wheelchair to the toilet is an accommodation to provide access to toileting services, rather than medical treatment for a disability." *Barker*, 2021 WL 5564625, at *1; *see also Morris v. California*, No. 21-16059, 2022 WL 2901730, at *1 (9th Cir. 2022) (reversing a district court's conclusion that denial of a wheelchair and transfer to a wheelchair-accessible facility was medical care and therefore outside the scope of the ADA).

The present case too is not within the purview of *Madigan*. A hearing aid battery does not "treat" hearing loss, and a failure to provide one is not medical malpractice. It is no more medical treatment or less an accommodation than the installation of a wheelchair ramp outside a prison building or handrails in a shower. Instead, a hearing aid battery would have accommodated Womble's disability by allowing him to hear, and therefore access, the services of the prison, just like a prisoner without such a disability, and as the ADA requires. The district court erred by dismissing Womble's ADA claim on this ground.

Finally, it makes no difference that Womble listed individual employees rather than a public entity as defendants for his ADA claim. When a plaintiff fails to clarify whether he is suing defendants in their individual or official capacities, this Court looks to the course of proceedings to determine the plaintiff's intent. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Womble's ADA claim clearly intended to proceed against defendants in their official capacities, as Title II ADA claims may only proceed against a public entity. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Thus, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … it is no different from a suit

against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Finally, at this early stage Womble has sufficiently alleged deliberate indifference to his rights under the ADA to proceed under a damages theory. *See Basta v. Novant Health Inc.*, 56 F.4th 307, 316 (4th Cir. 2022). Womble alleges that Defendants were on notice of his need for a battery but disregarded it for over eight months. J.A. 29. That is sufficient to proceed at this early stage.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed and the case should be remanded for service and further proceedings.

Respectfully submitted,

*<u>/s/ Samuel Weiss</u>*

September 2, 2026

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW Front 1 #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure. This brief contains 3,771 words excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Times New Roman, a proportionally spaced typeface. The text of the electronic brief is identical to the text of the paper copies. A virus detection program was run on the file and no virus was detected.

/s/ *Samuel Weiss*
Samuel Weiss

## CERTIFICATE OF SERVICE

I certify that on September 2, 2026, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/ *Samuel Weiss* .
Samuel Weiss